Rel: October 10, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0147
_____

## Nicholas Hoffman

### v.

## City of Birmingham Retirement and Relief System and the Board of Managers of the City of Birmingham Retirement and Relief System

### Appeal from Jefferson Circuit Court
### (CV-23-900802)

STEWART, Chief Justice.

Nicholas Hoffman appeals from a judgment of the Jefferson Circuit Court ("the circuit court") denying his mandamus petition against the City of Birmingham Retirement and Relief System ("the System") and the Board of Managers of the System ("the Board") (collectively referred to as "the respondents"), in which he sought review of the Board's decision to deny his applications for extraordinary and ordinary disability benefits. For the following reasons, that judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Facts and Procedural History

In 2009, Hoffman was hired by the City of Birmingham as a firefighter and became a participant in the System. In 2022, Hoffman applied to the Board for both extraordinary and ordinary disability benefits, contending that he had developed hypertension that prevented him from performing his job as a firefighter. On December 28, 2022, Hoffman was notified that his applications for both extraordinary and ordinary disability benefits had been denied by the Board.

On March 10, 2023, Hoffman sought review of the Board's decisions by filing a petition for the writ of mandamus in the circuit court, pursuant to § 45-37A-51.139(a), Ala. Code 1975 (Local Laws, Jefferson County

Municipalities) ("Any decision of the [B]oard denying a benefit claimed may be subject to review by the circuit court" by "filing therein a petition for mandamus."). He attached to his petition certain occupational medical standards applicable to his employment with the Birmingham Fire Department that recognize that hypertension "compromises [a firefighter's] ability to safely perform essential job tasks." Those standards also limit the use of certain antihypertensive agents, including "beta-blockers," to control blood pressure, because they "compromise [a firefighter's] ability to safely perform essential job tasks … due to risk for dehydration, electrolyte disorders, lethargy, and dissident equilibrium." He further noted that § 11-43-144(a)(5)a., Ala. Code 1975, defines "firefighter's occupational disease" as a condition of impairment caused by, among other things, hypertension.

In his petition, Hoffman alleged that he had not had high blood pressure at the time his employment with the Birmingham Fire Department began in 2009 but that he had developed and had been diagnosed with hypertension during his employment. Hoffman's petition detailed his doctors' attempts to control his hypertension without resorting to beta-blockers:

"During the course of Mr. Hoffman's employment with Birmingham as a firefighter and paramedic, he developed and was diagnosed as having hypertension. At first, hypertension control was attempted using a medication known as Hydrochlorodthiazide (HCTZ). … It is useful as medication for high blood pressure in firefighters as it does not contain beta-blockers and other agents which firefighters cannot take. This medication did not work for Mr. Hoffman.

"Mr. Hoffman was then placed on Lisinopril[;] however, during the course of taking Lisinopril, Mr. Hoffman had an allergic reaction and experienced excessive weight loss dropping from 200 pounds down to 163 pounds and impacting his stamina. … Mr. Hoffman's physician advised him to stop taking Lisinopril and placed him back on HCTZ. … However, the medication still failed to properly control Mr. Hoffman's blood pressure. He discussed this with his physician.

"Mr. Hoffman attempted to perform his job without taking blood pressure medication for a time, relying more on diet and exercise. … His blood pressure [became] dangerously high. His supervisors informed him he must get his blood pressure under control. …

"Mr. Hoffman was prescribed a calcium channel blocker (Norvasc) to control his blood pressure again, but without long-term success. Eventually he was prescribed a beta-blocker, Bystolic[,] in addition to Norvasc. Mr. Hoffman resisted this and requested to change medications in April 2022. Mr. Hoffman was then prescribed Valsartan an angiotensin 2 receptor blocker in addition to Norvasc. However, this medication caused Mr. Hoffman to have another allergic reaction due to its relationship to ACE inhibitor medications. Reluctantly, Mr. Hoffman was placed back on a beta-blocker and a calcium channel blocker to control his hypertension.

"Mr. Hoffman discussed this matter with supervisors and ascertained from these conversations that he could not perform his duties as a firefighter due to high blood pressure and the only means of controlling the high blood pressure was with beta-blocker medication. The Safety Division provided standards to him verifying this. Taking this medication was contrary to firefighting occupational standards ….

"Mr. Hoffman consulted with a treating cardiologist, Dr. John Eagan of Cardiovascular Associates, on these matters in hopes that a resolution could be reached which preserved his occupation …. His cardiologist advised that he should continue on his current regimen utilizing beta-blockers as he was perfectly stable and that he had exhausted all other anti-hypertensive regimens. In particular, his cardiologist found that it was in the patient's best interest to remain on the current regimen of Norvasc, a calcium channel blocker[,] and Bystolic, a beta-blocker.

"Mr. Hoffman also consulted with his primary care physician, Dr. James Casey, who had been treating him for several years. Dr. Casey noted efforts to try Mr. Hoffman on numerous different blood pressure medications without success and that his blood pressure was only able to be controlled with a beta-blocker medication."

Hoffman alleged that, after he had filed his applications for disability benefits, he had been briefly examined by a doctor selected by the Board, Dr. Bruce Romeo. According to Hoffman, Dr. Romeo incorrectly concluded that Hoffman had not exhausted all other antihypertensive regimens, and the Board subsequently denied his applications. Hoffman alleged that the Board's decisions to deny his

applications for extraordinary and ordinary disability benefits were incorrect and sought an order from the circuit court awarding him such benefits.

On September 26, 2023, the circuit court dismissed Hoffman's action with prejudice on the basis that he had not obtained service on the respondents. In Hoffman v. City of Birmingham Retirement & Relief System, 411 So. 3d 1195 (Ala. 2024), this Court reversed that judgment, with five members of this Court agreeing that the circuit court had exceeded its discretion by dismissing the action with prejudice, and we remanded the case to the circuit court for further proceedings. On remand, the circuit court set aside its judgment of dismissal. Hoffman obtained service on the respondents on or about September 30, 2024, and on October 15, 2024, he served written discovery requests to the respondents.

On October 29, 2024, the respondents filed a "response to plaintiff's petition for mandamus." In their response, the respondents included the following statement of the facts:

"Nicholas Hoffman … was employed as a firefighter by the City of Birmingham. [Hoffman] applied for both extraordinary disability benefits and ordinary disability benefits from the System. In his application for benefits, he

6

explained that he was suffering from hypertension and treating his hypertension with a beta-blocker and a calcium channel blocker.

"At its October 12, 2022, meeting the Board considered [Hoffman's] applications for extraordinary disability benefits and ordinary disability benefits. The Board also heard a statement from [Hoffman]. The Board went into executive session to consider [Hoffman's] application[s], his statement to the Board, and to review the medical findings of Dr. Bruce Romeo, the Board's medical expert who had examined [Hoffman] and reviewed his medical history and records. The Board continued [Hoffman's] applications to its November meeting for further research and review. At its November meeting, the Board considered additional information provided by Dr. Romeo and [Hoffman], including a letter with attached medical records and documentation dated by [Hoffman] on October 27, 2022. Finally, at its December Board meeting, the Board again went into executive session to consider [Hoffman's] applications. At its December meeting, the Board denied the extraordinary disability application and the ordinary disability application, based upon the opinion of its medical expert that [Hoffman] had not exhausted all other antihypertensive regimens, when there had been no trial of alpha-blockers and treatments with calcium blockers."

The respondents argued that Hoffman's claim for extraordinary disability benefits was due to be denied as a matter of law because his alleged disability -- hypertension -- was not "received as a result of an accident arising out of and in the course of his … employment in the service and occurring at a definite time and place," as required by § 45-37A-51.226(b)(1), Ala. Code 1975 (Local Laws, Jefferson County

Municipalities). The respondents also contended that the Board's decision as to Hoffman's claim for ordinary disability benefits was not "manifestly wrong" considering Dr. Romeo's opinion that Hoffman had not exhausted all antihypertensive regimens. The respondents, however, did not file any affidavits or evidentiary material to support their factual assertions. Additionally, the circuit court was not provided any materials considered by the Board in making its decisions to deny Hoffman's applications for disability benefits.

On January 28, 2025, without conducting a hearing, the circuit court entered a judgment summarily denying Hoffman's mandamus petition. The circuit court's judgment states:

> "This cause of action came before the Court on the petitioner's Request for Writ of Mandamus after having received an adverse decision from the [Board] denying his request for Extraordinary Disability Benefits as well as Ordinary Disability Benefits. After full and fair consideration of said petition and the defendants' response, this Court finds that the petitioner does not meet the statutory requirements to qualify to receive Extraordinary disability allowance as set out in Alabama Code § 45-37A-51.226(b) or (c), neither does he met the statutory requirements to qualify to receive Ordinary disability allowance as set out in Alabama Code § 45-37A-51.225 as he failed to meet the burden of proof required as set out in Alabama Code § 45-37A-51.227.
>
> "Pursuant to Alabama Code § 45-37A-51.139 this Court finds that there is no indication that the decisions of the board

were plainly and manifestly wrong. WHEREFORE the decisions of the board are hereby sustained. WRIT DENIED."

(Capitalization in original.)

On February 10, 2025, Hoffman filed a postjudgment motion in which he argued that the circuit court's sua sponte denial of his mandamus petition without notice, a hearing, or any evidence before it was error. Furthermore, Hoffman noted that discovery was ongoing and that his discovery requests to the respondents remained unanswered. The circuit court denied Hoffman's postjudgment motion that same day, and this appeal followed.

## Analysis

On appeal, Hoffman contends that the circuit court erred in denying his mandamus petition without notice or a hearing and without providing Hoffman the chance to present evidence in support of his petition. We agree, in part. Section 45-37A-51.139, which authorizes the circuit court to review a decision of the Board by way of a petition for the writ of mandamus, provides, in relevant part, as follows:

"(a) Any decision of the board denying a benefit claimed may be subject to review by the circuit court, in the manner and subject to the limitations herein provided. An employee may secure a review of a decision of the board by mandamus proceedings in the circuit court, which proceedings the

employee shall institute, ... by filing therein a petition for mandamus. ... In the proceedings in the circuit court, any evidence relevant on any issue involved in the review shall be admissible, subject to the ordinary rules of evidence. If the submission in the mandamus proceedings is solely upon the proceedings before the board, the decision of the board upon all matters of fact shall be final and conclusive, unless it affirmatively appears that its decision is plainly and manifestly wrong.

"(b) If in the circuit court evidence is received, in addition to that considered by the board, the decision of the board upon all matters of fact, nevertheless, shall be final and conclusive, except to the extent limited by the next following sentence. If the circuit court, after hearing all the evidence offered, determines that had the decision rendered by the board been rendered after hearing such evidence that such decision would not have been manifestly wrong, then the circuit court shall sustain the decision of the board; and if the circuit court, after considering all the evidence offered, determines that the decision rendered by the board would have been manifestly wrong had such decision been rendered after considering all the evidence considered by the circuit court, then in that event the circuit court shall render the decision which that court concludes should be rendered on all the evidence considered by that court. ..."

In Peters v. Board of Managers of City of Birmingham Retirement & Relief System, 624 So. 2d 1367 (Ala. 1993), this Court discussed the standard of review to be applied to a Board decision by the circuit court under § 45-37A-51.139, and we adopted the Court of Civil Appeals' interpretation of that statute set forth in Brewer v. City of Birmingham Retirement & Relief System, 585 So. 2d 46 (Ala. Civ. App. 1990):

10

"[Section 45-37A-51.139] allows the circuit court to review the Retirement Board's decision based solely on the evidence that was presented to the Retirement Board, or to consider additional evidence that was not before the Retirement Board when it made its determination. From [§ 45-37A-51.139], the [Brewer] Court distilled the following standard of review for cases where the trial court does hear additional evidence that was not presented to the Retirement Board: First, the trial court should determine whether the decision of the Retirement Board is manifestly wrong in light of the evidence that was presented before the Retirement Board; the trial court should then determine whether the additional evidence presented would render the board's decision manifestly wrong."

624 So. 2d at 1370.

Here, however, the circuit court could not have engaged in a review of the Board's decision as contemplated by § 45-37A-51.139 because it did not yet have before it the evidence that had been presented to the Board, and Hoffman was not provided with an opportunity to present additional evidence not considered by the Board. That is not to say, however, that a circuit court must necessarily review such evidence when it appears from the face of the petition that the petitioner can prove no set of facts that would possibly entitle the petitioner to relief. See Rule 12(b)(6), Ala. R. Civ. P., and Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (noting that "a Rule 12(b)(6) dismissal is proper … when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that

would entitle the plaintiff to relief"); accord Lawson v. Swift, 280 Ala. 227, 230-31, 191 So. 2d 379, 382 (1966) (stating the common-law rule that, when facts alleged in a petition for the writ of mandamus do not show a right to relief, the petition should be denied regardless of whether the petitioner's averments are controverted or denied).

Indeed, it appears that the circuit court in this case may have treated the response to Hoffman's petition as a Rule 12(b)(6) motion to dismiss. In that document, the respondents argued that Hoffman's claim for extraordinary disability benefits failed as a matter of law because Hoffman's purported disability was not alleged to have been caused by an accident occurring at a definite time and place -- a statutory requirement for entitlement to extraordinary disability benefits. See § 45-37A-51.226(b) (providing that, to receive extraordinary disability benefits, a claimant's disability must result from "an accident arising out of and in the course of his or her employment in the service and occurring at a definite time and place"). Rather, Hoffman alleged that he had "developed" hypertension "[d]uring the course of [his] employment with Birmingham." The respondents also directed the circuit court to Renfrow v. Board of Managers of City of Birmingham Retirement & Relief System,

12

579 So. 2d 1347 (Ala. Civ. App. 1990), a case in which our Court of Civil Appeals held that a claimant was not entitled to extraordinary disability benefits because his hearing loss was caused by repeated exposure to workplace noise over a period of years and was not attributable to an accident "occurring at a definite time and place." Id. at 1349. The circuit court in this case agreed with the respondents and held that Hoffman did not meet the statutory requirements to receive extraordinary disability benefits under § 45-37A-51.226. Hoffman, however, did not address the circuit court's reasoning in his postjudgment motion; moreover, he has not directly addressed that issue in his briefing to this Court. We, therefore, decline to reverse the circuit court's judgment as it relates to Hoffman's claim for extraordinary disability benefits.

Turning to Hoffman's claim for ordinary disability benefits, we conclude that the circuit court's judgment was entered in error. As to that claim, the respondents argued that, based on the evidence presented to the Board, the Board's decision was not manifestly wrong, and the circuit court concluded that Hoffman had not met his burden of proof before the Board to establish his entitlement to ordinary disability

13

benefits.[1]  However, the allegations in Hoffman's mandamus petition indicate that there is at least a possibility that he could prevail on his claim for ordinary disability benefits, and, as Hoffman correctly argues, (1) the circuit court did not have the materials presented to the Board before it and (2) Hoffman was not provided the opportunity to present additional evidence that could potentially render the Board's decision manifestly wrong.  See § 45-37A-51.139(b) and Peters, 624 So. 2d at 1370.  Accordingly, as to Hoffman's claim for ordinary disability benefits, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Finally, Hoffman contends that the circuit court's rulings in this case are evidence of bias against him by the circuit-court judge, and he requests that this Court exercise its supervisory authority to order that, on remand, the case be reassigned to a different circuit-court judge.

---

[1]Section 45-37A-51.225(a), Ala. Code 1975 (Local Laws, Jefferson County Municipalities), provides, in pertinent part: "In the event a participant … shall become totally disabled to perform his or her customary duties … and not be entitled to an extraordinary disability allowance, he or she shall … be entitled to a monthly ordinary disability allowance …."

Whether to order a reassignment is a prudential question that depends on a variety of factors, including:

> "'(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.'"

State v. Epic Tech, LLC, 373 So. 3d 809, 814 (Ala. 2022) (quoting United States v. Robin, 533 F.2d 8, 10 (2d Cir. 1977)). Based on the limited materials in the record before us, however, we cannot say that those factors weigh in favor of reassignment of the circuit-court judge.[2]

## Conclusion

We affirm the judgment of the circuit court to the extent that it denied Hoffman's mandamus petition as to Hoffman's claim for extraordinary disability benefits. We reverse the judgment denying Hoffman's mandamus petition as it relates to his claim for ordinary

---

[2]Hoffman also asks this Court to provide "declaratory relief" affirming his right to conduct discovery on remand. Nothing in the record indicates that the circuit court precluded Hoffman from conducting discovery after he had obtained service on the respondents or that it will preclude discovery on remand. Accordingly, that issue is not before us and we decline to address it.

15

disability benefits, and we remand the cause for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Wise, Sellers, Cook, and Lewis, JJ., concur.